CONGROVE ET AL. *v.* HOLMES.

[Cite as Congrove v. Holmes (1973), 37 Ohio Misc. 95.]

(No. 34,387—Decided November 16, 1973.)

Common Pleas Court of Ross County.

*Mr. Russell H. Volkema,* for plaintiffs.
*Mr. David L. Barrett,* for defendant.

COFFMAN, J. This cause originally came on to be heard on motion of the plaintiffs for summary judgment in their favor upon all or any parts of said cause, pursuant to Section 2311.041 of the Ohio Revised Code and Rule 56 of Ohio Rules of Civil Procedure. The motion was initially overruled, and later reconsidered by this court who is now sitting as the trial judge by special assignment. This court sustained plaintiffs' motion for reconsideration and sustains plaintiffs' motion for summary judgment. The court overrules defendant's motion for reconsideration.

Plaintiffs filed their cause of action prior to the adoption of the Rules of Civil Procedure. The motion for summary judgment was filed subsequent to the adoption of the Rules. R. C. 2311.041 having been superseded by the Rules of Civil Procedure, Civ. R. 56 will therefore govern and control the issues contained in this motion.

The pertinent parts of Rule 56 of the Ohio Rules of Civil Procedure are as follows:

"(A) A party seeking to recover upon a claim, * * * may, * * * move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. * * *

"(C) * * * The adverse party prior to the day of hearing may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

"(D) If on motion under this rule summary judgment is not rendered upon the whole case * * * the court in deciding the motion, shall examine the evidence or stipulation properly before it, and shall if practicable, ascertain what material facts exist without controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order on its journal specifying the facts that are without controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

"(E) Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts

as would be admissible in evidence. * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.''

The plaintiffs claim in their motion that they have established by means of pleadings, answers to interrogatories, written admissions, affidavits and depositions the following:

''(1) The defendant performed a bi-lateral thyroidectomy on the plaintiff Joyce Congrove on September 9, 1968.

''(2) The defendant led the plaintiffs to believe that the said thyroidectomy would be of benefit to plaintiff Joyce Congrove.

''(3) The defendant did not inform plaintiffs of any risks or dangers connected with the contemplated surgery, namely, the bi-lateral thyroidectomy.

''(4) There were in fact dangers and risks connected with the surgical performance of a bi-lateral thyroidectomy, one of them being the paralyzing of the vocal cord, or cords, of the patient.

''(5) As a direct and proximate result of the bi-lateral thyroidectomy a vocal cord, or vocal cords, of plaintiff Joyce Congrove were paralyzed, or partially paralyzed; and damaged.

''(6) The paralysis, or partial paralysis, of the vocal cords of Joyce Congrove is of a permanent nature and condition.''

The plaintiffs alleged in their complaint that the defendant failed to inform the plaintiffs of any dangers or risks involved in the operation which the defendant intended to, and did, perform. The evidence which plaintiffs submitted in support of their motion and which is related to the six matters listed by the plaintiffs in their motion is as follows:

As to the first matter listed in plaintiffs' motion the

plaintiff, in her affidavit, stated that the defendant had performed a bi-lateral thyroidectomy upon her. The defendant admitted this in his deposition and also in answer to plaintiffs' Request for Admissions. This establishes the first part of the plaintiffs' motion as a matter of law.

Regarding the second part of plaintiffs' motion, that "the defendant led the plaintiffs to believe that the said bi-lateral thyroidectomy would be of benefit to the plaintiff Joyce Congrove," this too has been conclusively established. The defendant admitted this in his request for admissions and in his deposition.

Regarding the third listed matter "the defendant did not inform plaintiffs of any risks or dangers connected with the contemplated surgery, namely, the bi-lateral thyroidectomy," the plaintiff in her affidavit stated "that the said defendant did not inform her of any dangers or risks involved in the performance of such an operation." The defendant in his deposition, on page 10, responded to questioning as follows:

"Q. Doctor, did you indicate to her there would be any probability or possibility she would suffer a *nerve damage* as a result?

"A. No.

"Mr. Barrett: Object.

"Q. In other words, then, if I understand this right, you didn't inform her of any dangers or risks involved? Is that right?

"Mr. Barrett: Object.

"The Witness: Not specifically. I feel that most intelligent people know that there is some risk in surgery.

"I feel that were I to point out all the complications—or even half of the complications—that I would take the responsibility for in trying to help people, that many people would refuse to have anything done and, therefore, would be much worse off.

"Mr. Barrett: Object to the answer.

"Q. And then this is the reason why you did not—

"A. Yes.

"Q.—inform her of any dangers or risks involved?

"Mr. Barrett: Object.

"The Witness: Yes.

"Q. Is that the reason?

"A. Yes." (Emphasis added.)

This admission of his failure to inform is as a matter of law not negated by defendant's answer to plaintiffs' Request for Admissions No. 3, where the defendant answered "no" to plaintiffs' request to admit that the defendant did not inform the plaintiffs of any dangers or risks connected with the contemplated surgery; so this aspect of this case is conclusively established.

Regarding matter no. 4 contained in plaintiffs' motion "that there were in fact dangers and risks connected with the surgical performance of a bi-lateral thyroidectomy, one of them being the paralyzing of the vocal cord, or cords, of the patient," the defendant again admitted in his answer to plaintiffs' Request for Admissions that there were in fact dangers and risks and that one of them was the paralyzing of the vocal cord, or cords, of the patient. The Request for Admissions and the answers referred to are as follows:

"4. That there are in fact dangers and risks connected with the surgical performance of a bi-lateral thyroidectomy.

"Answer: Yes.

"5. That one of the risks connected with a bi-lateral thyroidectomy is the paralyzing of the vocal cord, or cords, of the patient.

"Answer: Yes."

So this fact too is conclusively established, as a matter of law.

Beginning with the fifth part of plaintiffs' motion, where plaintiffs ask the court to determine as a matter of law that "as a direct and proximate result of the bi-lateral thyroidectomy a vocal cord, or cords, of plaintiff Joyce Congrove were paralyzed, or partially paralyzed; and damaged," the defendant states in his answer to plaintiffs' Request for Admissions that "I do not personally know whether her vocal cords were paralyzed or partially paralyzed so cannot give an opinion in this respect." The

defendant thereby disqualified and eliminated himself as a possible witness in this case on this issue. Plaintiffs, on the other hand, submitted in support of their motion an affidavit signed by James R. Hardie, M. D., wherein he stated that based upon the history of this case, upon his medical examination, and upon reasonable medical certainty and probability that there is damage to the vocal cords of Joyce Congrove and to her breathing control, and that this damage is a direct and proximate result of a surgical procedure used in the performance of the bi-lateral thyroidectomy which was performed upon her by Nicholas. H. Holmes, M. D. Dr. Hardie further stated that there is damage to the vocal cords and the breathing control of Mrs. Congrove, and the damage is permanent in nature. The damage aspect is also corroborated in the deposition of Dr. Saunders on page 9:

"Q. Doctor, in your opinion, based upon your examination of Mrs. Congrove, and reasonable medical certainty and probability, do you have an opinion whether or not the condition of the left true vocal cord as being fixed and the right true vocal cord as not functioning as well as it should, whether or not that is a permanent condition?

"Mr. Barrett: Object.

"A. Yes, I would say that it is.

"Q. (By Mr. Post) Doctor, in your opinion, is there anything that can be done to alleviate this problem?

"A. Well, I think there is nothing that could be done to make the cords move again. Something could be done to improve the airway.

"Q. What would that be, Doctor?

"A. Well, she could, for example, have a tracheotomy. That would improve her airway, or she could have intralaryngeal surgery of various types, which could improve her airway."

The court is naturally cognizant of the requirement that under the summary judgment procedure the evidence must be construed most strongly in defendant's favor. However according to the rule the court must give the "reasonable minds" test in considering the evidence which is before

the court. Civ. R. 56(C) states "a summary judgment shall not be rendered unless it appears from such evidence * * * or that reasonable minds can come to but one conclusion * * *."

The standards in evaluating whether an issue of fact is made on a motion for summary judgment are the same as in the ruling on a motion for directed verdict. *Cunningham v. J. A. Myers Co.* (1964), 176 Ohio St. 410, at page 414, states, "the proper test is the 'reasonable minds test' enunciated by this court as to directed verdicts in *Hamden Lodge v. Ohio Fuel Gas Co.*, 127 Ohio St. 469." Also, *Albrecht v. Estate of Noie* (1964), 177 Ohio St. 167.

The plaintiffs have submitted evidence on each essential point. The defendant has submitted no admissible evidence which would create an issue of fact. The defendant must submit conflicting evidence on pertinent issues under consideration or summary judgment on the issues must be granted.

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment if appropriate, shall be entered against him." Civ. R. 56 (E).

Informed consent consists of a duty imposed by law upon a physician to inform his patient of the nature of the surgery he intends to perform, the probable consequences, risks and hazards of this procedure, and the benefits that can be anticipated from this procedure. A physician who fails in this responsibiltiy and duty has failed to give his patient sufficient information on which to base a consent to any operative or treatment procedure. Breach of this duty is recognized as tortious misconduct actionable as medical negligence where harm proximately results therefrom. Annotation 79 A. L. R. 2d 1028; 41 Minn. Law Review 381, at 427; 31 Journal of the American Trial Lawyers Association 141-144.

The duty of the physician or surgeon to inform his patient is outlined and defined in four leading cases on the subject: *Pratt* v. *Davis* (1906), 224 Ill. 300, 79 N. E. 562; *Mohr* v. *Williams* (1905), 95 Minn. 261, 104 N. W. 12; *Schloendorff* v. *Society of New York Hospital* (1914), 211 N. Y. 125, 105 N. E. 92; and *Rolater* v. *Strain* (1913), 39 Okla. 572, 137 P. 96. These cases were analysed by Mr. Allan H. McCoid, as follows:

"If we accept the language of the four opinions as applied to the facts in each, the law of civil liability of doctors for unauthorized operations appear as follows: Every individual has a right to the inviolability of his person which forbids a surgeon or a physician to invade the bodily integrity of his person. Whenever a surgeon or a physician, without the patient's permission, performs or operates or renders medical treatment, he prima facie commits a battery. Exceptions will be recognized in unusual circumstances where it is impracticable to obtain the consent of the patient and where there is a serious threat to the life or health of the patient which must be dealt with immediately, either by rendering wholly unauthorized medical treatment or by extending the scope of an authorized operation to remove or overcome an unforeseen condition. The fact that the medical treatment to which there is no consent is not seriously harmful, or is in fact beneficial to the patient, does not excuse the doctor. Further, the fact that the treatment is conducted in accordance with the dictates of good surgery or medicine and is done in a skillful and careful manner does not constitute an excuse. As to all of these points the four cases are uniform." A Reappraisal of Liability for Unauthorized Medical Treatment, 41 Minn. Law Review 381, at 392.

In one of the leading cases in the United States on the doctrine of informed consent, *Natanson* v. *Kline* (1960), 186 Kan. 393, 350 P. 2d 1093 rehearing denied, 187 Kan. 186, 354 P. 2d 670 (1960), the court held that each man is considered to be the master of his own body and he may, if he so desires, expressly prohibit the performance of lifegiving surgery, or other medical treatment, and while a doctor

might well believe that an operation or form of treatment is necessary, the law does not permit him to substitute his own judgment for that of the patient.

In the *Natanson* case the patient had a radical left mastectomy of the breast for cancer. Subsequent to this procedure, she was treated with radioactive cobalt. This was a very dangerous type of proceeding and she was not informed of any of the dangers inherent in the procedure. The defendant-physician was held to be negligent for failing to inform the patient of the possible hazards involved. Failure to do so was a failure to secure the "informed consent" of the patient.

In the case of *Bowers* v. *Talmadge* (Fla. 1963), 159 So. 2d 888, an arteriogram was performed on a child to determine if the child's problem was organic or emotional. It was not explained to the child or parents that there was a three percent morbidity rate in this procedure. The court stated the rule as follows:

"Doctor von Storch was under a duty to adequately inform the parent or parents of the child as to the dangers to be anticipated as a result of the operation, and not to minimize them * * *." *Ibid.*, 889.

The consent to an operation or treatment procedure which is the product of an uninformed patient is in fact no consent and the performance of the operation or treatment procedure upon the body of the patient without informed consent constitutes a trespass, *i. e.*, assault and battery as well as negligence. Once it has been determined that the patient's consent is in fact an "uninformed consent" then the question as to the degree of skill employed by the physician in performing the operation or treatment is immaterial and irrelevant.

The lack of the information required by law to be given to a patient vitiates any "consent," whereupon the physician or surgeon is absolutely liable for all injuries and damages sustained by the patient as a result of the operation or procedure, even though the physician or surgeon exercises the highest degree of medical care in performing this operation or administering the procedure.

In an Ohio case, *Lacey* v. *Laird* (1956), 166 Ohio St. 12, 139 N. E. 2d 25, the Ohio Supreme Court held that whether a surgical operation is beneficial or harmless it is, in absence of proper consent, actionable. In another Ohio case, the case of *Belcher* v. *Carter* (1967), 13 Ohio App. 2d 113, the court, in its syllabus, clearly held in accordance with the general law that a lack of informed consent constitutes actionable negligence:

"Since a failure to inform may be serious enough to vitiate an apparent consent, an allegation of failure to inform the plaintiff of risks involved in a touching is sufficient to support a recovery based upon a theory of either negligence or battery, and a motion to separately state and number may properly be sustained."

In the case of *Canterbury* v. *Spence* (C. A. D. C. 1972), 464 F. 2d 772, the court held that a physician has a legal duty to inform the patient of the dangers and risks involved in the intended surgery and a failure to do so constitutes negligence. Any adverse result from an operation which is within the realm of the dangers and risks involved and which is not revealed to the patient is automatically compensable; as a matter of law.

The court reasoned that the informed consent doctrine is based on the proposition that every competent person is the final arbiter of whether or not he gets cut, by whom he gets cut, and where he gets cut. A patient has the sovereign choice of whether he will submit to surgery in the course of the diagnosis and treatment, and in order to make this choice meaningful and realistic the doctor is under a legal duty to disclose to a patient any serious risks involved in the contemplated surgery, and the alternatives available to him, including the risks from declining surgery.

The doctrine of informed consent does not depend on expert medical testimony and the patient is not required to produce medical evidence that there is a local standardized professional practice to make the disclosure in question, such as danger of voice loss from a thyroidectomy. In other words, the court stated that the basis of liability, based upon lack of informed consent, makes it unnecessary

for the patient to produce expert testimony of the doctor's negligence in the surgery or other treatment. The duty to disclose serious risks should not be based upon the doctor's practices but upon the patient's need for full disclosure of serious risks and the feasibility of alternatives in order for the patient to make an intelligent and informed choice.

While this is an absolute duty on the part of the physician to so inform his patient, a plaintiff is not prohibited from also submitting evidence, such as she has in the case at bar, that it is the standard of practice to inform a patient of any dangers and risks involved in surgery. Such testimony however merely supplements the legal duty to inform which is already there as a matter of law.

Where there is no testimony to the contrary, as is true in the case at bar, and where the defendant doctor admits that he did not inform the patient, as in this case, reasonable minds cannot differ on the issue, and the court should render judgment in favor of the plaintiffs on this issue.

In applying the reasonable minds test to the evidence, and applying the law to the facts, all the requirements on the part of the plaintiffs for the granting of a summary judgment have been met; and the defendant has presented nothing to create an issue of fact which would preclude the granting of such a judgment. This leaves only the amount of damages as the sole issue for trial.

The uncontroverted evidence clearly shows that plaintiff Joyce Congrove was injured and that Eldon Congrove, also was damaged because of the injury to his wife; reasonable minds could not conclude otherwise. The affidavit of Mr. Congrove states that, "prior to the operation his wife had a healthy, well-sounding, clear voice but that subsequent to the operation his wife has had, and continues to have, a frail and weak voice, which has caused his wife a great deal of embarrassment and fear; and that she cannot use her voice to carry on her normal procedures around the house which require amplification." Plaintiff Eldon Congrove further stated in his answer to interrogatories submitted by the defendant "I have suffered because of her discomfort and limited activities."

It Is Therefore Ordered, that the motion of the plaintiffs for summary judgment should be, and therefore hereby is, sustained, leaving only the amount of damages to be recovered by the respective plaintiffs as the only remaining issue in this case; and defendant's motion for reconsideration is hereby overruled.