Maureen F. COUGHLIN, Appellant,

v.

GEORGE WASHINGTON UNIVERSITY HEALTH PLAN, INC. and The George Washington University Health Plan and George Washington University Medical Center, Appellees.

No. 87–293.

District of Columbia Court of Appeals.

Argued Sept. 23, 1988.
Decided Oct. 18, 1989.

---

**68**

Mona Lyons, with whom William G. McLain and John W. Karr, Washington, D.C., were on brief, for appellant.

Leo A. Roth, Jr., with whom Sanford A. Friedman, Washington, D.C., were on brief, for appellees.

Before NEWMAN and FERREN, Associate Judges, and MACK,[1] Associate Judge, Retired.

NEWMAN, Associate Judge:

Maureen F. Coughlin appeals from an order of the Superior Court dismissing her action seeking recovery from George Washington University Health Plan, Inc., The George Washington University Health Plan and George Washington University Medical Center (collectively referred to as George Washington).[2] The trial court granted George Washington's motion to dismiss for failure to state a claim upon which relief can be granted. Super.Ct. Civ.R. 12(b)(6).

■ At this juncture in the case, we are presented with a very narrow and straightforward question: whether an allegation by a woman that she sustained physical and emotional injuries arising from the negligent mismanagement of her hypertensive condition and attendant miscarriage states a cause of action for which relief can be granted. On appeal from a Rule 12(b)(6) dismissal, we must construe the complaint in the light most favorable to the plaintiff and regard as true the allegations made therein. *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 364 (D.C.1984); *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979). Dismissal should be upheld only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted); *accord Laufer, supra*, 482 A.2d 363–64 (noting this court's longstanding adherence to the rule established in *Conley* ). We find that we cannot, as a matter of law, state that Coughlin herself was not injured as a consequence of

---

1. Judge Mack was an Associate Judge of this court at the time of argument. Her status changed to Associate Judge, Retired, on October 1, 1989.

2. Coughlin's malpractice claims against two individual defendants were subsequently dismissed by her.

George Washington's alleged conduct, or that she could not recover damages upon proof of those injuries. Accordingly, we hold that the complaint adequately sets forth a cause of action. We reverse and remand for further proceedings.

## I.

Coughlin filed a complaint in Superior Court alleging that she suffered both physical and emotional injury as a result of a miscarriage arising from George Washington's negligent mismanagement of her hypertensive condition during her pregnancy. Coughlin's allegations are more fully set out in the pretrial memoranda (which the trial court treated as an opposition to a motion to dismiss), wherein she states that the tests taken during her first visit to George Washington's obstetrical clinic revealed that her blood pressure was elevated and a diagnosis of "probable chronic hypertension" was noted on her medical record. Coughlin claims that despite the well-established high risks associated with elevated blood pressure during pregnancy, George Washington did not refer her to the separate clinic for high risk obstetrical patients, but instead provided her with only perfunctory prenatal care.

Coughlin asserts that her blood pressure continued to test in the elevated range at her subsequent appointments. At her fourth and final visit, Coughlin claims that her blood pressure tested at a level high enough to warrant immediate hospitalization for monitoring and treatment or, at a minimum, strict instructions for her to refrain from going to work and remain in bed. She alleges neither action was taken.

One week later, according to Coughlin, she returned to the clinic. At this time the resident physician was unable to detect a fetal heartbeat, and fetal death *in utero* was subsequently confirmed by sonogram. Five days later Coughlin was hospitalized for induction of labor. She "delivered" the dead fetus on August 3rd, following the second day of artificial labor induction procedures, which included the administration of up to triple strength dosages of Pitocin, a drug that causes painful intensification of uterine contractions, and the rectal insertion of suppositories of Prostaglandin, a drug that also stimulates uterine contractions.

Coughlin's injuries, concomitant with George Washington's alleged negligence, were described in the pleadings as follows:

[S]erious, permanent and painful bodily and emotional injuries, including but not limited to, unnecessary surgery and permanent injury to her body and the loss of her child; she was required to be hospitalized and to incur medical, hospital, and other expenses for the care and treatment of her injuries so sustained; she has experienced, and will in the future experience, pain and suffering, mental and emotional anguish and anxiety, humiliation, embarrassment, and distress; and has suffered and will continue to suffer the loss of her normal and recreational activities and the curtailment thereof. (Complaint, Rec. 236)

[E]normous physical and emotional pain and suffering during her pregnancy, and the subsequent labor and stillbirth. Her psychological pain and suffering is continuing and permanent, inasmuch as she suffers, and will continue to suffer, from the grief and anguish associated with the unnecessary termination of a wanted pregnancy and the loss of her fetus.... Ms. Coughlin was unable to resume work for five months after the stillbirth and lost approximately $15,000 in earnings. Further, when she returned to work in January, 1983, her grief rendered her unable to function adequately and she resigned four months later on April 15, 1983. Ms. Coughlin claims lost wages at the rate of $32,955 *per annum* until she was reemployed on April 14, 1986. (Pretrial Memorandum, Rec. 261–62)

In its answer, George Washington defended on the grounds of failure to state a claim upon which relief can be granted and lack of negligence; alternatively it pleaded contributory negligence and assumption of risk. In its pretrial memoranda (which the trial court treated as a motion to dismiss for failure to state a claim), George Washington urged dismissal of the complaint on

two grounds. First, George Washington argued that *if* any injury occurred, it was to the fetus and not to Coughlin, and therefore under *Greater Southeast Community Hospital v. Williams*, 482 A.2d 394 (D.C. 1984), the action should have been brought by the estate of the stillborn fetus under the District of Columbia's wrongful death and survival statutes. Second, George Washington contended, relying on *Asuncion v. Columbia Hospital for Women*, 514 A.2d 1187 (D.C.1986), that Coughlin is precluded from recovering for negligent infliction of emotional distress, because she did not incur any physical injury other than the "normal pain of delivery." The trial court dismissed for failure to state a claim.

## II.

■ A pregnant woman, like any other patient, is owed a duty of care by her doctor throughout the duration of the patient-doctor relationship, and thus the doctor may be liable for any injury negligently inflicted upon the patient. *See* W. PROSSER & P. KEETON, THE LAW OF TORTS 369 n. 30 (5th ed. 1984) ("Pregnant women have traditionally been given recovery for their own injuries caused by miscarriage."); *Bonbrest v. Kotz*, 65 F.Supp. 138, 142 (D.D. C.1946) (defendants accused of causing prenatal injury to viable fetus should be accountable for the "wrongful act, if such is proved, [for they] have invaded the right of an individual—employed as the defendants were in this case to attend, in their professional capacities, both the mother and child."); *Tebbutt v. Virostek*, 65 N.Y.2d 931, 483 N.E.2d 1142, 1146, 493 N.Y.S.2d 1010, 1014 (1985) (Jasen, J., dissenting) ("Concomitant with the view that the mother is owed a distinct duty of care, women have traditionally been given recovery for their own injuries caused by the stillbirth or miscarriage."); *Ledford v. Martin*, 87 N.C.App. 88, 359 S.E.2d 505, 507 (1987)

("When an obstetrician agrees to take on a pregnant woman as a patient, he actually acquires two patients: mother and baby."); *cf. Johnson v. Verrilli*, 134 Misc.2d 582, 511 N.Y.S.2d 1008, 1010 (N.Y.Sup.Ct.1987) ("Certainly, as their patient, the defendants owed the plaintiff a duty of care which, the complaint alleges, they breached by their omission during the last month of her pregnancy" and in light of her allegation of physical injury, dismissal of her suit was in error); *McBride v. Brookdale Hospital Center*, 130 Misc.2d 999, 498 N.Y.S.2d 256, 261–62 (N.Y.Sup.Ct.1986) ("if a mother, while giving birth is *independently physically* injured by the negligence of her attending physician who also causes the death of her fetus, then she may seek recovery for any resulting emotional upset.").

George Washington argues, however, that this jurisdiction's recognition of the separate legal personhood of a viable fetus, to whom we have ascribed a legally cognizable cause of action for injury negligently inflicted *in utero*, *Williams*, *supra*, 482 A.2d at 395 (holding that "a viable fetus negligently injured *en ventre sa mere* is a 'person' within the meaning of the District of Columbia's wrongful death and survival statutes."); *Bonbrest*, *supra*, 65 F.Supp. at 139 (finding that a viable fetus is a "separate, distinct, and individual entity" from its mother and thus may bring a cause of action in tort for prenatal injuries in its own right), extinguishes the mother's cause of action for her own independent injuries where a miscarriage is alleged. We find no merit in this contention.

■ The availability of a cause of action to a negligently injured viable fetus under the common law and the statutes is simply irrelevant to whatever rights and remedies a mother may have to recover for separate injuries inflicted upon her.[3] *See Johnson*

---

3. It is impossible to determine from the pleadings whether the fetus in this case was in fact viable. If the fetus was *not* viable, there are authorities that would hold that injury to the nonviable fetus, in and of itself, constitutes injury to the woman. *Cf. Snow v. Allen*, 227 Ala. 615, 151 So. 468, 471 (1933) ("[s]o long as the child is within the mother's womb, it is a part of

the mother, and for any injury to it, while yet unborn, damages would be recoverable by the mother in a proper case."); *Modaber v. Kelley*, 232 Va. 60, 348 S.E.2d 233, 236 (1986) ("trial court did not err by instructing the jury that 'injury to an unborn child in the womb of the mother is to be considered as physical injury to the mother'"). *Williams*, *supra*, 482 A.2d at

*v. Ruark Obstetrics & Gynecology Associates*, 89 N.C.App. 154, 365 S.E.2d 909, 917 (1988) ("recognition that the legal fiction of 'personhood' may or may not be imputed to a fetus for some purposes does not determine whether a physical injury to the Johnson fetus *in fact* caused impact or resulting injury to Mrs. Johnson"). Irrespective of the unique relationship between mother and fetus, we view the present situation as being no different from any other case where the negligent acts of a tortfeasor may yield separate and distinct claims of liability from each individual injured by his negligence.

■ Whether the miscarriage in this case resulted in an injury to the mother is an issue of fact that must be resolved at trial through proof by competent evidence. Coughlin's complaint, while broadly drafted, confines itself to seeking recovery for the physical and emotional harm the mother sustained under the care and treatment of George Washington; we see no attempt therein to recover for any injury to the fetus.

■ We also reject any claim that Coughlin has not adequately alleged physical impact sufficient to form the basis for a claim of negligent infliction of emotional distress. "[T]here can be no recovery for negligently caused emotional distress, mental disturbance, or any consequence thereof, where there has been no accompanying physical injury," *District of Columbia v. Smith*, 436 A.2d 1294, 1296 (D.C.1981) (citations omitted), however, "the physical injury need not be substantial to sustain" that burden. *Asuncion, supra*, 514 A.2d at 1189. Again, accepting Coughlin's allegations as true, the mother suffered multiple physical injuries as a consequence of the miscarriage and George Washington's mistreatment of her hypertension.

First, Coughlin asserts her hypertension remained untreated over the course of several months, aggravating her condition and causing pre-eclampsia, which placed her at risk of convulsions, coma, and the destruction of her placenta. Second, the fetus within Coughlin's body died as a result of George Washington's failure to treat the hypertension, and the mother had to carry the dead fetus *in utero* for six days prior to its "delivery." Finally, Coughlin avers she was required to endure two days of painful induction procedures under circumstances which did not constitute part of the "normal" birth process. *Cf. Johnson, supra*, 365 S.E.2d at 916–17 (allegations of failure to treat mother's incipient diabetes and death of fetus give rise to action for negligent infliction of emotional distress); *Ledford, supra*, 87 N.C.App. at 89, 359 S.E.2d at 507 (recovery for mental and emotional anguish permitted where mother suffered "severe abdominal pain" and surgical removal of stillborn child); *Modaber v. Kelley*, 232 Va. 60, 348 S.E.2d 233, 236 (1986) ("failure to properly treat and manage plaintiff's toxemia" constitutes physical injury to mother).

In conclusion, we note that this court long ago dispensed with the argument that problems of causation, injury and damages inherent in the peculiarly symbiotic relationship between a mother and her fetus were sufficient reason to deprive either mother or fetus of the right to recover for injuries caused by the negligence of others. *Bonbrest, supra*, 65 F.Supp. at 142–43. These problems are "not a vital basis for refusing to recognize a cause of action," *Williams, supra*, 482 A.2d at 398, but rather must be resolved at trial through the production of evidence, the ability of the parties to prove or disprove to the fact finder the various elements of their claims, and well-crafted jury instructions.

*Reversed and remanded.*

395, leaves open to question whether an independent cause of action exists for injury to a nonviable fetus; whether such an injury would be to the woman and, thus, the cause of action hers; or whether no cause of action accrues.

We need not and do not decide that issue in this case, since Coughlin's complaint at least alleges injury to herself independent of any injury to the fetus, viable or not. This is sufficient to withstand the motion to dismiss.