Monica JONES, Appellant,

v.

HOWARD UNIVERSITY, INC., and Victor F. Scott, M.D., Appellees.

No. 87–650.

District of Columbia Court of Appeals.

Argued Oct. 19, 1988.
Decided April 16, 1991.

---

Mark S. Carlin, with whom Daniel E. Schultz was on the brief, Washington, D.C., for appellant.

Harold E. Jordan, with whom Tomás R. Lopez was on the brief, Washington, D.C., for appellee Howard University, Inc.

James M. Heffler, Washington, D.C., for appellee Victor F. Scott, M.D.

Before ROGERS,* Chief Judge, BELSON and SCHWELB, Associate Judges.

BELSON, Associate Judge:

On this appeal from an order granting summary judgment in favor of defendant hospital and physician, the issue is whether a mother who underwent a diagnostic x-ray and surgery during the first trimester of her pregnancy can recover for the mental distress she experienced out of concern for her health and the health of her unborn twins where the treating physician and hospital were negligent in failing to ascertain and inform her that she was pregnant and in failing to warn her of potential consequences of those procedures before performing them but where the twins were in fact born healthy. We hold that summary judgment was inappropriate because it is far from clear on this record that Mrs. Jones will not be able to satisfy the requirements of the zone of danger rule recently adopted by this court in *Williams v. Baker*, 572 A.2d 1062 (D.C.1990) (en banc).[1]

## I.

Because we are reviewing the trial court's grant of a summary judgment, we must construe the facts in the light most favorable to the appellant. *See Burt v. First Am. Bank*, 490 A.2d 182, 185 (D.C. 1985). Appellant Monica Jones was admitted to Howard University Hospital under the care of appellee Victor Scott, M.D. Mrs. Jones, who had a history of gastro-intestinal problems, was suffering from nausea, vomiting, and dehydration. A variety of radiology studies, including abdominal

---

* Judge Rogers was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

1. We withheld decision of this appeal pending our en banc reconsideration of *Williams v. Baker*, 572 A.2d 1062 (D.C.1990). Pursuant to our invitation the parties submitted further briefs after *Williams v. Baker* was decided.

x-rays and upper GI and small bowel series, were performed on Mrs. Jones. Although Mrs. Jones had informed the hospital staff that she was 25 years old, had not had a menstrual period in about two months, had ceased using birth control pills, and had breast tenderness, she was not given a pregnancy test before being x-rayed. After being diagnosed as suffering from cholecystitis (diseased gall bladder), Mrs. Jones underwent surgery for removal of her gall bladder.

Approximately two weeks after the surgery and while Mrs. Jones was still a patient in the hospital, she was informed that she was pregnant with twins of fourteen to fifteen weeks gestation. The twins were born healthy and normal, and since birth have demonstrated no physical or mental problems that their physicians have related to exposure to radiation.

The realization that she had been pregnant when she underwent the x-rays and surgery caused Mrs. Jones to suffer emotional distress and anxiety over the potential injury to her twin unborn children. She also became concerned over the prospect that she might experience a spontaneous abortion or other complications. The procedure that was performed in fact created a risk of spontaneous abortion. A clinical psychologist diagnosed Mrs. Jones as suffering from post-traumatic stress disorder, symptoms of which included depression, anxiety, sleep disturbance, guilt, mistrust of authority figures, denial, and avoidance. Mrs. Jones's emotional distress lasted throughout her pregnancy, and she continues to have profound fears regarding her children's health and well being, both present and future.

Mrs. Jones filed suit against Howard University and Dr. Scott on two counts: 1) that appellees were negligent in subjecting

her to radiation without first performing appropriate tests for pregnancy or taking an adequate history that would have revealed that she was pregnant; and 2) that appellees failed to obtain her informed consent to the x-rays and surgery.[2] According to Mrs. Jones, she would not have consented to either the x-rays or the surgery had she known that she was pregnant and instead would have continued with the antibiotic treatment to which she was responding. Her own medical expert, however, stated at deposition that eventually her gall bladder would have to have been removed.

The trial court granted summary judgment in favor of defendants consistent with the then-controlling law that there could be no recovery for emotional distress absent an accompanying physical injury. *See Asuncion v. Columbia Hosp. for Women,* 514 A.2d 1187, 1188 (D.C.1986). Since then, this court has gone beyond the limitations of the so-called "impact rule" to allow recovery to a plaintiff for negligent infliction of serious emotional distress and any resultant physical injury as long as "the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety." *Williams, supra,* 572 A.2d at 1067.[3] We reverse the trial court's ruling and hold that Mrs. Jones can recover if she can convince the trier of fact upon remand that the amount of radiation to which she was exposed or the surgical procedure presented a threat to her own health or that of her unborn twins and that as a result she experienced mental distress that was "serious and verifiable."

## II.

■ We first address appellant's claim that the doctor and the hospital are liable for damages to her because they failed to

2. Mrs. Jones originally sought to recover damages on her own behalf and on behalf of her twin sons. She subsequently dismissed the complaint as to her sons.

3. The ruling of the trial judge was correct when made. Reversal results from our conclusion that it is clearly appropriate, pursuant to the criteria we set forth in *Mendes v. Johnson,* 389 A.2d 781 (D.C.1978) (en banc), to apply our

holding in *Williams, supra,* retroactively. Applying the *Mendes* criteria, we note in particular that it is highly improbable that the appellees relied upon the previous state of the law in treating Mrs. Jones and that there is little prospect that the administration of justice will be heavily burdened as the result of retroactive application. *Mendes, supra,* 389 A.2d at 789.

obtain her informed consent, and explain why we reject it. In the context of medical malpractice cases based on a lack of informed consent, a physician's breach of duty to disclose is actionable in negligence only if "it induces a patient's uninformed consent to a risky operation from which damages actually result." *Gordon v. Neviaser,* 478 A.2d 292, 295–96 (D.C.1984); *Kelton v. District of Columbia,* 413 A.2d 919, 922 (D.C.1980).[4] As the court stated in *Canterbury v. Spence:*

> No more than breach of any other legal duty does nonfulfillment of the physician's obligation to disclose alone establish liability to the patient. An unrevealed risk that should have been made known must materialize, for otherwise the omission, however unpardonable, is legally without consequence.

150 U.S.App.D.C. 263, 281, 464 F.2d 772, 790, *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); *accord, Downer, supra* note 5, 322 A.2d at 92.

Here, assuming that Dr. Scott and the hospital were negligent in failing to inform Mrs. Jones that she was pregnant before obtaining her consent to the x-rays and surgery, Mrs. Jones still cannot recover on a malpractice claim grounded upon lack of informed consent because the unrevealed risk that her unborn twins would be physically harmed did not materialize. The x-rays and surgery of themselves cannot be viewed as supplying the physical injury necessary for recovery under an informed consent theory because, having served their intended purpose, they did not constitute the realization of an undisclosed risk. *Cf. Kelton, supra,* 413 A.2d at 922–23 (distinguishing between negligent failure to disclose and unconsented-to surgical procedure). The emotional harm of which Mrs. Jones complains was not an unrevealed risk of the surgical procedure or x-rays that were performed.[5] Therefore, Mrs. Jones cannot recover under the informed consent theory.[6]

## III.

We now turn to the question of whether appellant can seek recovery under the zone of danger rule adopted by this court in *Williams, supra.* Under traditional principles of tort law, a plaintiff who did

---

**4.** We note that while an unauthorized surgical procedure can be the basis for a battery claim, a physician's failure to disclose risks attendant to a medical procedure is actionable only on a theory of medical negligence. *See Crain v. Allison,* 443 A.2d 558, 562 (D.C.1982) ("[T]he standard for measuring performance of the physician's duty to disclose is conduct which is reasonable under the circumstances.") The reasons for treating an action based on a physician's failure to disclose as a negligence claim rather than a battery claim are well articulated in *Downer v. Veilleux,* 322 A.2d 82, 89–90 (Me. 1974) (quoting *Trogun v. Fruchtman,* 58 Wis.2d 569, 207 N.W.2d 297 (1973)); *accord, Cobbs v. Grant,* 8 Cal.3d 229, 239–41, 104 Cal.Rptr. 505, 511–12, 502 P.2d 1, 7–8 (1972); *Sard v. Hardy,* 281 Md. 432, 440 n. 4, 379 A.2d 1014, 1020 n. 4 (1977). *But see Shetter v. Rochelle,* 2 Ariz.App. 358, 409 P.2d 74, 86 (1965), *modified,* 2 Ariz. App. 607, 411 P.2d 45 (1966); *Congrove v. Holmes,* 37 Ohio Misc. 95, 102, 308 N.E.2d 765, 770 (1973); *Sagala v. Tavares,* 367 Pa.Super. 573, 580, 533 A.2d 165, 169 (1987).

**5.** We do not rule out the possibility that a plaintiff could recover for emotional harm under an informed consent theory. If a course of treatment includes a risk that it would cause emotional harm or some kind of mental injury, and such a risk were unrevealed and should materialize, the emotionally-harmed person would

have a cause of action based on lack of informed consent, even in the absence of physical injury. Mrs. Jones's emotional harm, however, was not the result of the materialization of an unrevealed risk of her medical treatment.

**6.** Nor can Mrs. Jones recover on the theory that appellees breached their contractual duty of reasonable care. In *Asuncion, supra,* this court declined to adopt a rule based on a contract theory that would allow recovery for negligent infliction of emotional distress without accompanying physical injury where traditional tort law would preclude recovery. 514 A.2d at 1190–91. As for Mrs. Jones's claim of intentional infliction of emotional distress, we do not agree that, on this record, appellees' failure to diagnose Mrs. Jones's pregnancy before subjecting her to x-rays could be found to constitute "'extreme and outrageous conduct'" that goes "'beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community.'" *See Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980) (quoting RESTATEMENT (SECOND) OF TORTS § 46, comment d (1965); *cf. Downer, supra* note 5, 322 A.2d at 90 (physician's failure to inform usually not an intentional act within traditional concept of intentional torts).

not suffer direct physical injury as a result of the defendant's negligence could not recover for negligently inflicted emotional distress. *See Asuncion, supra,* 514 A.2d at 1188; *Coughlin v. George Washington Univ. Health Plan, Inc.,* 565 A.2d 67, 71 (D.C.1989). Thus, the same lack of a physical injury that rules out application of the informed consent doctrine also precluded Mrs. Jones from recovering under traditional tort principles for appellees' negligence in failing to ascertain whether she was pregnant before subjecting her to the x-ray and surgical procedures.[7]

In *Williams, supra,* this court held that a plaintiff may recover for negligent infliction of serious emotional distress, even without an accompanying physical injury, "if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety ... regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence." 572 A.2d at 1067. To avail herself of this zone of danger rule, Mrs. Jones must first establish that the x-rays or surgical procedure did in fact pose a danger to the safety of herself or her non-viable unborn twins. The threat of injury from these sources must have been more than minimal or negligible.

In applying the zone of danger rule we must recognize that its logic requires that the plaintiff's presence in the zone of danger be contemporaneous with her fear for her own safety. *See Williams, supra,* 572 A.2d at 1067. This requirement will be satisfied in this case if it is established that the x-rays did in fact pose a threat to the unborn twins because, although Mrs. Jones was not aware at the time she underwent the x-rays that she was pregnant, the threat that the radiation could harm the unborn twins continued throughout her pregnancy. The same would be true of the distress, if any, that resulted from the performance of the surgery. As stated in the RESTATEMENT (SECOND), "[t]he fear may be, and usually is, fear of immediate harm, but if the negligence results in a long continued peril, the illness may be caused by the cumulative effects of the anxiety and suspense caused by the other's constant subjection to it." § 436 comment c.

Another issue presented by this case is whether an injury to the unborn twins was an injury to Mrs. Jones herself. With respect to *viable* unborn children, we held in *Greater Southeast Community Hosp. v. Williams,* 482 A.2d 394 (D.C. 1984), that they are persons within the meaning of the District of Columbia's wrongful death and survival statutes. In *Coughlin, supra,* we dealt with an action by a mother against health care providers for negligence that caused her child to be stillborn. 565 A.2d at 70 & n. 3. It was not clear from the record whether the unborn child had been viable. We referred to authorities "that would hold that injury to the non-viable fetus, in and of itself, constitutes injury to the woman." *Id.* We take the view that to authorize the mother to pursue, in her own right, claims for injury to a non-viable fetus represents a more orderly approach to the adjudication of such claims than does a requirement that such claims be pressed as wrongful death and survival claims. For the purpose of a tort action by the mother for injury to a non-viable fetus, therefore, we hold that injury to the fetus is an injury to the mother.[8] In this case, as the twins were in their first trimester, it is apparent that Mrs. Jones would be able to press in her own

7. We will not pass upon the question whether Mrs. Jones can proceed on a combined informed consent and zone of danger theory by contending that the failure of the appellees to obtain her informed consent negligently placed her in the zone of danger and is therefore actionable if she suffers serious and verifiable harm as a consequence. To permit that result would require the abandonment of the principle that the informed consent theory cannot justify recovery unless the undisclosed injury materializes. It is, in any event, unnecessary to contemplate the marriage of the informed consent and zone of danger theories. As our discussion makes clear, Mrs. Jones can proceed under a straightforward application of the zone of danger theory.

8. We do not reach the question whether a person born subsequent to surviving an injury incurred as a non-viable fetus can later bring an action for damages for such injury.

right any claims for injury to the unborn twins. This holding has relevance to our holding in *Williams* that

> if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether the plaintiff experienced a physical impact as a direct result of defendant's negligence.

*Williams, supra,* 572 A.2d at 1067.

A question we left open in *Williams, supra,* and which we must now address, is whether the zone of danger rule allows recovery only for emotional distress that results in physical injuries or physical manifestations. 572 A.2d at 1068. While noting that the zone of danger rule developed with the requirement that the mental distress results in physical injury, this court in *Williams, supra,* recognized the problems that inhere in distinguishing between purely mental distress and mental distress resulting in physical injury. *Id.* Although we were not required to take a position on the issue, we indicated our agreement with the New York approach, as articulated in *Bovsun v. Sanperi,* 61 N.Y.2d 219, 231, 473 N.Y.S.2d 357, 363, 461 N.E.2d 843, 849 (1984), that "in furtherance of the policy of excluding recovery for trifling distress, the claimed distress must be 'serious' and 'verifiable.' " *Williams, supra,* 572 A.2d at 1068. We now adopt this requirement. As stated in *Williams, supra:*

> The fact that [the different forms of emotional disturbance] are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law.

572 A.2d at 1068 (quoting RESTATEMENT (SECOND) OF TORTS § 436A comment c (1965)); *see also Vance v. Vance,* 286 Md. 490, 500, 408 A.2d 728, 733 (1979) ("[A] plaintiff can sustain an action for damages for nervous shock or injury caused without physical impact, by fright arising directly from defendant's negligent act or omission and resulting in some clearly apparent and substantial physical injury *as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state.*" (quoting *Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182, 184 (1933) (emphasis supplied)).

Thus, if Mrs. Jones's distress was serious and verifiable [9] she can recover for the mental distress she has suffered as a result of her fear that the x-ray radiation or surgical procedure had injured her or her unborn children or would cause the children to be born with injuries.

In sum, the absence of an accompanying physical injury does not preclude Mrs. Jones from recovering for serious and verifiable mental distress she has suffered as a result of her fears that exposure to radiation or the surgery would cause harm to herself or her unborn twins. It is clear from our recitation above of the facts of this case as seen in the light most favorable to Mrs. Jones that she has raised genuine issues as to facts material to her right to recover on a zone of danger theory. We therefore remand this case for a trial at which Mrs. Jones will have the

9. With respect to future consequences to Mrs. Jones of the theoretical injury to herself or her unborn children, *i.e.,* consequences that will be felt after trial, they are compensable only if such injuries are "reasonably or probably certain to follow." *American Marietta Co. v. Griffin,* 203 A.2d 710, 712 (D.C.1964); *see also Wilson v. Johns–Manville Sales Corp.,* 221 U.S.App. D.C. 337, 345, 684 F.2d 111, 119 (1982).

opportunity to establish that she is entitled to recover under that theory.

*Reversed and remanded.*