**Gresha BROWN, et al., Plaintiffs,**

v.

**Richard P. GREEN, M.D., Defendant.**

**Civ. A. Nos. 90–0847–LFO, 91–0785–LFO.**

United States District Court, District of Columbia.

Dec. 24, 1991.

Ashcraft & Gerel by Michelle A. Parfitt, James M. Hanny, Washington, D.C., for plaintiffs.

Brault, Graham, Scott & Brault, Laurence T. Scott, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Defendant filed Motions for Summary Judgment on both of the consolidated cases in the above entitled matter. Treating the Motion for Summary Judgment in Civil Action No. 90–0847, 767 F.Supp. 273, as a Motion for Reconsideration and Summary Judgment and the Motion in Civil Action No. 91–0785 as a Motion for Summary Judgment, a hearing was held on December 19, 1991. In the Memorandum of June 13, 1991, defendant's Motion for Summary Judgment on Civil Action No. 90–0847 was denied. Subsequently, plaintiffs filed a second complaint requesting recovery specifically for the mother's injuries. For the reasons stated in the following Memorandum, which may be supplemented, the Motion for Reconsideration and Summary Judgment on Civil Action No. 90–0847 shall be granted and the Motion for Summary Judgment on Civil Action No. 91–0785 shall be denied.

### I.

As stated in the June 17, 1991 Memorandum, plaintiffs allege that the defendant Doctor Richard Green, a gynecologist practicing in the District of Columbia, provided plaintiff Gresha Brown with negligent prenatal care resulting in the premature birth and subsequent death of the pre-viable twins that Brown was carrying. While there remains a genuine issue of fact regarding whether defendant breached the relevant standard of care, it is undisputed that Green's alleged negligence occurred before the fetuses were viable, when "the[ir] organs, particularly the lungs, were not sufficiently developed to support life, either independently or with artificial aid." Affidavit of Anne B. Fletcher; *see also* Autopsy Reports, May 31, 1989. The issue, once again before the Court, is whether a pre-viable fetus, born alive but dying soon after birth, may recover for injuries caused by a physician's negligent care.

### II.

The Memorandum of June 17, 1991 stated that there was "no clear answer to this question under District of Columbia law, which controls in this diversity action." *Id.* at 2. *See, e.g., Schleier v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc.*, 876 F.2d 174, 180 (D.C.Cir.1989) (holding that out of comity to the District of Columbia Court of Appeals federal courts should, where appropriate, apply District of Columbia law in diversity cases). On April 16, 1991, the District of Columbia Court of Appeals issued their opinion in *Jones v. Howard University*, 589 A.2d 419 (D.C.App.1991) firmly declaring their answer to the question of recovery for injuries to pre-viable fetuses by stating that an "injury to the fetus is an injury to the mother." *Id.* at 423. Specifically, the Court held that:

With respect to viable unborn children, we held in *Greater Southeast Community Hosp. v. Williams*, 482 A.2d 394 (D.C.1984), that they are persons within the meaning of the District of Columbia's wrongful death and survival statutes. In *Coughlin* [v. George Washington Univ. Health Plan, Inc., 565 A.2d 67 (D.C. 1989)], we dealt with an action by a mother against health care providers for negligence that caused her child to be stillborn. It was not clear from the record whether the unborn child had been viable. We referred to authorities 'that would hold that injury to the non-viable fetus, in and of itself, constitutes injury to the woman.' We take the view that to authorize the mother to pursue, in her own right, claims for injury to a non-viable fetus represents a more orderly approach to the adjudication of such claims then does a requirement that such claims be pressed as wrongful death and survival claims. For the purpose of a tort action by the mother for injury to a non-viable fetus, therefore, we hold that injury to the fetus is an injury to the mother.

*Id.* (citations omitted).[1]

The plaintiffs attempt to distinguish the *Jones* case from the instant case based on the argument that the cases involve distinct factual patterns. In *Jones* the fetuses were not harmed by the alleged negligence and were successfully carried to term. Nevertheless, the *Jones* Court held that even in these limited circumstances the mother may be able to recover if she is able to prove that the medical procedure's posed "a danger to the safety of herself or her non-viable unborn twins." *Id.* at 423. In the instant case, Ms. Brown's twins died as a result of the miscarriage, allowing for a potentially greater ability to show more than minimal harm to the mother. Further, in this situation it is unnecessary to look for particular factual patterns that match exactly. The importance of the *Jones* decision lies in the exposition of the

D.C. Court of Appeals' ruling on the issues of recovery with regard to pre-viable fetuses and the unity of mother and pre-viable fetuses for the purposes of a tort action. The Court's answer is quite clear from the *Jones'* opinion.

Additionally, as noted in the June 17, 1991 Memorandum, the majority rule is that a fetus may not recover for injuries sustained before viability. *See, Estate of Baby Foy v. Morningstar Beach Resort, Inc.*, 635 F.Supp. 741 (D.V.I.1986); *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032, 1036 (1990); *Milton v. Cary Medical Center*, 538 A.2d 252 (Me.1988); *Rambo v. Lawson*, 799 S.W.2d 62 (Mo.1990) (en banc); *Coveleski v. Bubnis*, 391 Pa.Super. 409, 571 A.2d 433 (Pa.Super.) *appeal granted*, 525 Pa. 656, 582 A.2d 323 (Pa.1990). As a result, the defendant's Motion for Reconsideration and his Motion on the underlying Summary Judgement on Civil Action No. 90–0847 are granted.

### III.

In their second complaint, plaintiffs argue that Gresha Brown may recover in her own right as a result of defendant's alleged negligence. The defendant challenges the element of damages arguing that the "mental, emotional and psychological damages" claimed by the plaintiffs are not valid bases for recovery. Further, he argues that the miscarriage produced no actual physical injury and argues that without an actual injury, recovery is precluded. *See Asuncion v. Columbia Hospital for Women*, 514 A.2d 1187, 1188 (D.C.App.1986) (no recovery for emotional distress absent an accompanying physical injury).

Plaintiffs rely on *Modaber v. Kelley*, 348 S.E.2d 233, 239 (Va.1986) to stress that the evaluation of emotional distress is a factual issue for the jury. Additionally, plaintiffs hint at the argument that there was an actual physical injury to Ms. Brown as a result of the miscarriage which was, in itself, painful.

---

1. Footnote 8, states that the Court did not reach the question of whether a fetus, born subsequent to surviving an injury incurred as a non-viable fetus, can later bring an action for damages for such an injury. Similarly, it is not necessary to reach such a decision in the instant case, since the fetuses did not survive the alleged negligence.

In *Williams v. Baker*, 572 A.2d 1062 (D.C.App.1990), the Court held that if a plaintiff is in the "zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence." *Id.* at 1067. The Court did not reach the question of whether recovery would be possible if based solely on emotional distress in response to a physical danger that did not result in physical injury. *Id.* Moreover, in *Jones v. Howard University*, 589 A.2d at 423, the D.C. Court of Appeals, applied the rule promulgated in *Williams.* In the *Jones* case, a woman, in early pregnancy, underwent x-rays and surgery for a gall bladder condition resulting in emotional trauma concerning the health of her unborn twins. The twins were later born normal and healthy.

> To avail herself of this zone of danger rule, Mrs. Jones must first establish that the x-rays or surgical procedure did in fact pose a danger to the safety of herself or her non-viable unborn twins. The threat of injury from these sources must have been more than minimal or negligible.

*Id.* at 423. The Court of Appeals overturned the lower court's decision, which had granted summary judgment to the hospital, because Ms. Jones may be able to show at trial that she was in the zone of danger.

In the instant case, Ms. Brown may be able to show that she was in the zone of danger through the death of the fetuses, considered at this point to be part of their mother. These injuries can potentially be shown to be more than "minimal" or "negligible." *Id.* Further, the physical event of a miscarriage at the stage of Ms. Brown's pregnancy may in itself be considered a physical harm that could place Ms. Brown in the zone of danger. Ultimately, the nature or extent of the injuries alleged raises a factual question that should, in this case, be decided by a jury.

Therefore, defendant's summary judgment motion on Civil Action 91–0785 must fail.