Plaintiffs-appellants are Elizabeth B. Snyder et al. and defendants-appellees are David C. Ash, D.D.S., et al.
On October 14, 1985, Dr. Ash examined Snyder and advised her to undergo a wisdom tooth extraction involving three impacted molars. Plaintiff returned to Ash's office on October 21, 1985, and with the assistance of Ash's office assistant (Echman), completed a standard consent form. (Appendix A.) Included on the form was a "line item" (12) that a fractured jaw could result from the extraction, along with other complications such as brain damage and/or death. There is conflicting testimony as to the extent of any pre-extraction discussion (as to complications) between Snyder and Ash. *Page 797 
During the extraction performed by Ash on October 23, 1985, Snyder's jaw was fractured. Ash located the fracture (specifically a left mandible fracture) and took immediate "emergency" steps, including the placement of "arch bars" and alignment wires in the patient's mouth. As a result of both the extraction and alignment measures performed by Ash, Snyder sought treatment from an oral surgeon, Dr. Sandel. Sandel performed a "bilateral ostetomy" whereby Snyder's jawbone was cut and realigned, and her mouth was wired shut a second time.
Appellant filed suit in the Court of Common Pleas of Stark County, and the matter came on for jury trial. At the conclusion of trial, the jury returned a verdict in favor of defendant Ash. The jury also returned specific interrogatories stating that defendant was not negligent in the care and treatment of Snyder, and answered affirmatively that Ash "gave an informed consent to the surgical procedure undertaken." The court entered its judgment entry on the verdict on May 10, 1990, and it is from that judgment that appellant appeals.
Snyder raises the following three assignments of error:
"A. The trial court erred as a matter of law as the statutory informed consent instruction was the incorrect law as applied to appellee dentist and misled the jury.
"B. The trial court committed reversible error in refusing to admit appellee Ash's office records into evidence, as the office records are admissible under the business record exception to hearsay and the exclusion from evidence is prejudicial to appellant.
"C. It was error for the trial court to exclude the jury instruction of res ipsa loquitur upon the jury's request of a definition of negligence."
 A
Before discussing this assigned error, we note that it is unchallenged that plaintiffs' case was grounded on alternative theories of recovery: negligence and/or failure of informed consent.
Appellants argue that the trial court gave an erroneous instruction on informed consent. The record reveals that both parties timely provided the court with their proposed jury instructions in accord with Civ.R. 51(A). As to the question of informed consent, plaintiffs requested an instruction based upon the common-law instruction found in Nickell v. Gonzalez (1985),17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145, syllabus. (Appendix B.) On the other hand, defendants filed citations to Ohio Jury Instructions, citing, but not *Page 798 
delineating, both the common-law instruction of Nickell and the OJI instruction based upon R.C. 2317.54. (Appendix C.)
Plainly, the difference between the two instructions is that the statutory instruction carries with it the presumption that a written consent is valid, absent bad faith or fraudulent misrepresentation. See second paragraph of R.C. 2317.54.[1]
The common-law instruction requires only that plaintiff demonstrate a "failure to disclose" material risks and dangers to find a lack of informed consent.
Based upon the well-established principle expressio unius estexclusio alterius, R.C. 2317.54 does not apply to appellee-dentist. Notwithstanding that the statute does not cover dentists, the trial court gave a hybrid, statutory/common-law instruction, viz., to show a lack of informed consent, *Page 799 
plaintiffs were required to prove a lack of good faith or the presence of fraudulent misrepresentation of material facts in the obtaining of said consent. The trial court stopped short of instructing that the statutory "presumption" of validity was created by the written consent form executed by Snyder, as suggested in the Comments to 3 OJI 331.05, paragraph 5.
Appellants timely objected, pursuant to Civ.R. 51(A), to the court's charge, on the straightforward grounds that the instruction was confusing and misleading. The trial court overruled the objection.
At this juncture, we note that neither party has provided us with controlling authority that the court below acted either properly or improperly in providing the instruction as given.Nickell, cited by both parties and cited supra, is a pre-statute decision involving a physician. (We say "pre-statute" because this 1985 opinion arose out of thoracic surgery which took place in 1970. There is no mention of R.C. 2317.54 [effective July 28, 1975] in Nickell.) Notwithstanding that Nickell deals with informed consent as to a physician, this court believes the standard enunciated in Nickell applies equally to the practice of dentistry.
We therefore conclude that the charge, as given, improperly added an additional element of proof to appellants' cause of action, viz., the proof of bad faith or fraudulent misrepresentation. The subject charge impeded plaintiffs' cause of action (sounding in informed consent) in a manner sufficiently prejudicial to constitute reversible error.
Accordingly, we sustain appellants' first assigned error.
 B
Prior to oral argument, appellant withdrew this assignment of error, providing notice to appellee. Said withdrawal is accepted.
 C
Evidence at trial indicated that at all times during Snyder's tooth extraction by Ash, Ash was the only person present and that Ash was in exclusive control of the operation. The trial court appropriately instructed the jury in its initial general charge on negligence, including res ipsa loquitur language. It did not, however, use the specific designation res ipsa loquitur
in so doing.
During deliberations, the jury asked to have the instructions on negligence reread to them. The trial court did so, but deleted that portion containing the res ipsa loquitur language which had been part of the original instruction. Appellants timely objected to the deletion. *Page 800 
In Marshall v. Gibson (1985), 19 Ohio St.3d 10, 19 OBR 8,482 N.E.2d 583, the Supreme Court declared: "It is thus clear that an incomplete charge will constitute grounds for reversal of a judgment where the charge as given misleads the jury." Appellees factually distinguish Marshall. In the case sub judice, the complete and proper instruction on negligence was given to the jury in the initial general charge by the trial court, whereas in Marshall, the jury never received the complete instruction (on comparative negligence). It is obvious the jury in the casesub judice intended further deliberations on the issue of negligence by their very propoundment of the specific request for reinstruction. Appellees would have us condone answering the jury with supplemental, incomplete, or misleading specific instructions as long as the jury had been given the proper instruction as part of the initial general charge. We are not willing to do so.
We conclude that failing to include the res ipsa loquitur
language of the negligence instruction in the court's reinstruction on negligence effectively minimized, if not abolished, appellants' potential cause of action on the res ipsaloquitur theory. Such failure constituted prejudicial error.
Accordingly, appellants' third assignment of error is sustained.
The judgment of the Stark County Court of Common Pleas is reversed, and the cause is remanded to the trial court for a new trial.
Judgment reversedand cause remanded.
PUTMAN, P.J., and SMART, J., concur.
[1] R.C. 2317.54 provides:
"No hospital, home health agency, or provider of a hospice care program shall be held liable for a physician's failure to obtain an informed consent from his patient prior to a surgical or medical procedure or course of procedures, unless the physician is an employee of the hospital, home health agency, or provider of a hospice care program.
"Written consent to a surgical or medical procedure or course of procedures shall, to the extent that it fulfills all the requirements in divisions (A), (B), and (C) of this section, be presumed to be valid and effective, in the absence of proof by a preponderance of the evidence that the person who sought such consent was not acting in good faith, or that the execution of the consent was induced by fraudulent misrepresentation of material facts, or that the person executing the consent was not able to communicate effectively in spoken and written [E]nglish or any other language in which the consent is written. Except as herein provided, no evidence shall be admissible to impeach, modify, or limit the authorization for performance of the procedure or procedures set forth in such written consent.
"(A) The consent sets forth in general terms the nature and purpose of the procedure or procedures, and what the procedures are expected to accomplish, together with the reasonably known risks, and, except in emergency situations, sets forth the names of the physicians who shall perform the intended surgical procedures.
"(B) The person making the consent acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner.
"(C) The consent is signed by the patient for whom the procedure is to be performed, or, if the patient for any reason including, but not limited to, competence, infancy, or the fact that, at the latest time that the consent is needed, the patient is under the influence of alcohol, hallucinogens, or drugs, lacks legal capacity to consent, by a person who has legal authority to consent on behalf of such patient in such circumstances.
"Any use of a consent form that fulfills the requirements stated in divisions (A), (B), and (C) of this section has no effect on the common law rights and liabilities, including the right of a physician to obtain the oral or implied consent of a patient to a medical procedure, that may exist as between physicians and patients on July 28, 1975.
"As used in this section the term "hospital" has the meaning set forth in division (D) of section 2305.11 of the Revised Code; "home health agency" has the meaning set forth in division (A) of section 3701.88 of the Revised Code; and "hospice care program" has the meaning set forth in division (A) of section3712.01 of the Revised Code. The provisions of this division apply to hospitals, doctors of medicine, doctors of osteopathic medicine, and doctors of podiatric medicine." *Page 801 
 APPENDIX A MICHAEL R. ZETZ, D.D.S., INC.
CONSENT FOR EXTRACTION OF IMPACTED (UNERUPTED) OR ERUPTED TEETH AND ACKNOWLEDGEMENT OF RECEIPT OF RISK INFORMATION
State law requires us to obtain your consent to your contemplated surgery or other medical procedure. What you are being asked to sign is simply a confirmation that we have discussed your contemplated operation or medical procedure and that we have given you sufficient information upon which to make a decision whether to have the operation or medical procedure and any choice as to the type of operation or medical procedure of your own free will. We have already discussed with you the common problems or undesired results that sometimes occur. We wish to inform you, not to alarm you. If you wish, however, we can go into more elaborate details of more unlikely problems. If you do not, that is also your privilege. PLEASE READ THE FORM CAREULLY. ASK ABOUT ANYTHING THAT YOU DO NOT UNDERSTAND. We will be pleased to explain it.
I hereby authorize and direct _____ with associate or assistants of his choice to perform the following surgery, diagnostic or medical procedure. I further authorize the doctors to perform any other procedure that in their judgment is advisable for my well being. PROCEDURE: __________
I am advised that though good results are expected, the possibility and nature of complications cannot be accurately anticipated and that, therefore, there can be no guarantee as expressed or implied either as to the result of surgery or as to cure.
 EXTRACTION OF IMPACTED (UNERUPTED) TEETH/ERUPTED TEETH CONSENT FORM
DEGREE AND KIND OF RISK KNOWN TO BE ASSOCIATED WITH THIS PROCEDURE, INCLUDING ANESTHESIA. THE FOLLOWING CONDITIONS MAY OCCUR DUE TO REMOVAL OF EITHER IMPACTED (UNERUPTED) TEETH OR ERUPTED TEETH.
The nature and purpose of this surgery for you is __________
___ 1. Your recuperation from surgery may require 3 to 7 days of restricted activity. It is very important that you return for removal of any sutures from 4 to 7 days after the surgery. ___ 2. Swelling is a certainty. Swelling is most marked on the 2nd or 3rd day and begins to disappear on the 4th or 5th day. ___ 3. Stiffness of the jaws (inability to open widely) occurs and usually relaxes about the 7th or 10th postoperative day. ___ 4. Numbness of the lower lip and chin following removal of lower third molars, or other lower teeth, can occur. This is due to the proximity of the root of the third molar or lower tooth to the nerve supplying this area of the face. The duration of this numbness varies and may last for a period of several months and possibly as long as 18 to 24 months. There are cases where this condition is permanent. Additional surgery may be indicated if this problem persists. ___ 5. Numbness of the tongue can occur because of the close proximity of the nerve supplying the tongue to the site of surgery. This condition may last from several weeks to months. There are cases where this is a permanent condition. Additional surgery may be indicated if this problem persists. ___ 6. Discoloration of the face can occur and may appear black and blue. This discoloration may change to a yellowish color after several days. ___ 7. There may be referred pain to the ear or possibly to the other teeth. A sore throat may be present for a day or two. After the removal of upper third molars or upper erupted teeth, there may be slight bleeding from the nose for 1 to 2 days. This is because of the location of third molars or upper teeth in relation to the sinus cavity. *Page 802 
___ 8. Upper third molars and other upper teeth lie in close proximity to the maxillary sinus above. A sinus may need to be opened to remove a tooth or a tooth fragment. After the extraction of one of these teeth, a connection between the mouth and sinus may persist. To correct this problem further treatment, which will likely involve additional surgery, will be needed. ___ 9. With the extraction of any tooth there is the possibility of damage to adjacent teeth and surrounding structures (example, a filling, crown or tooth may be fractured. If this occurs additional treatment including dental restorations, extractions, or root canals may be required. ___ 10. After removal of impacted teeth or erupted teeth, there may be delayed healing which must be attended to by your oral surgeon. This is called localized osteitis or "Dry Socket" and will require irrigation of the socket and application of a sedative dressing. This must be continued at 2- to 7-day intervals until you are comfortable. ___ 11. You may be informed following your extraction that a piece of tooth or root tip was not removed. There is generally no added complication in leaving a piece of root tip in place following an extraction. Additional surgery may be required. ___ 12. With the extraction of any tooth there is the possibility of a jaw fracture. If a fracture occurs it will be treated at the time of the occurrence. ___ 13. Death is considered a risk associated with general anesthesia and local anesthesia. ___ 14. Brain damage is considered a risk associated with general anesthesia and local anesthesia. ___ 15. Other __________
I hereby acknowledge that all my questions have been answered in a satisfactory manner.
I hereby state that I have read and understand this consent and that all blanks were filled in prior to my signature.
DATE: _____ TIME: ___ PM
Signature of patient __________
Signature of relative (where required) __________
Signature of representative (where required) __________
Witness __________
I certify that I have personally completed all blanks in this form and explained them to the patient or his representative before requesting the patient or his representative to sign it. *Page 803 
AULTMAN CENTER FOR ONE DAY SURGERY CANTON, OHIO Consent to Operation
My name is _____. I have talked to my doctor about
my condition, which is __________. My doctor and I talked about what might happen if we do not treat my condition. We also talked about different ways to treat it. We talked about the "pros" and "cons" of each of these different ways of treating my condition.
My doctor has recommended that the following operation be performed at the Aultman Center for One Day
Surgery: __________
He explained this operation to me and told me what he hopes it would do for me. He explained that my treatment may change depending on my condition. He also told me approximately how long it would take me to recover. My doctor, of course, did not promise that this operation would cure me or improve my condition. He gave me an opportunity to ask questions about my condition and the different ways to treat it. He answered my questions. I am satisfied with his answers.
I know there can be risks, complications or side effects whenever someone has an operation. I know my doctor cannot tell me about every possible risk, complication or side effect. We did talk about the major ones which could happen if I have the operation. I know what my doctor meant by them.
My doctor gave me an opportunity to ask questions about these risks and any other risks I wanted to know about. He answered my questions. I am satisfied with his answers.
I consent to have Dr. _____ and his qualified assistants operate on me. If any unexpected condition occurs during the operation which, in my doctor's opinion, needs treatment in addition to or different from that to which I gave my consent, I also consent to my doctor's doing, at that time, whatever he believes to be in my best interest.
If my doctor removes any tissue or parts, the Center may do with them what it normally does.
__________ __________ Signature Date and Time __________ Witness
 Consent to Anesthesia
In addition to giving my consent to having the operation performed as listed above, I also consent to have anesthesia care provided to me by members of the Anesthesia Care Team. I understand the Anesthesia Care Team includes physician anesthesiologists and certified registered nurse anesthetists. I understand that anesthesia care includes the administration of anesthetics and such other supportive medications and measures as I may require in the course of the operation.
I have spoken with a member of the Anesthesia Care Team about my anesthetic. I understand the purpose of receiving anesthesia and that all anesthetics involve risks and/or complications which may, on rare occasion, result in serious injury or death, from both known and unknown causes. I am satisfied with my understanding of my proposed anesthesia care.
 . . . . . INITIAL DO NOT CHECK. I read this form or had it read to me. Yes ___ No ___ I understand what it says. Yes ___ No ___ __________ __________ Signature Date and Time __________ Witness *Page 804 
 APPENDIX B Informed Consent
This is a civil action brought by the plaintiff to recover damages for injury claimed to have been caused by the failure of the defendant to inform the plaintiff about risks of injury in the surgical procedure undertaken by the defendant. To recover on this claim, the plaintiff must prove to you by the greater weight of the evidence that:
A. The defendant failed to disclose to and discuss with the plaintiff the material risks and dangers inherently and potentially involved with respect to the proposed surgical procedure and;
B. The undisclosed risks and dangers that should have been disclosed by the defendant did in fact happen and are the direct cause of injury to the plaintiff and;
C. A reasonable person in the plaintiff's position would have decided against the surgical procedure if the material risks and dangers inherently an [sic] incidental to it had been disclosed to her prior to the surgical procedure.
(OJI Section 331.04(1), Pg. 191, 192)
MATERIAL RISK. A risk is material when a reasonable person, while in the condition that the physician knows or should have known he was in, would be likely to consider important the risk in deciding whether or not to refuse the proposed surgical procedure.
(OJI Section 331.04(2), Pg. 192)
Plaintiff signed a written consent to the surgical procedure used by defendant, and that written consent would be valid and effective except where the evidence showed that the surgical procedure offered a different degree of risk than that which was explained to the patient. (Bruni [v.] Tatsumi (1976) 46 Ohio St.2d 127,136-137.)
A physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure. (Harnish v. Children's Hospital Medical Center, 439 N.E.2d 240.)
The physician failed to disclose a material risk associated with the procedure and the Plaintiff would have not undergone the procedure had she known of the risk of harm that in fact occurred. (Arena v. Gingerich, 748 P.2d 547 (OR.1988.)
The duty to disclose serious risks should not be based upon the doctors [sic] practices but on the patient's need for full disclosure of serious risks and the *Page 805 
feasibility of alternatives in order for the patient to make an intelligent and informed choice. (Congrove, et al. v. Homes,308 N.E.2d 765 (1973).) *Page 806 
 APPENDIX C IN THE COURT OF COMMON PLEAS STARK COUNTY, OHIO
ELIZABETH SNYDER, et al. ) CASE NO. 87-191-PI )
Plaintiffs ) JUDGE HAAS )
vs. ) )
DAVID C. ASH, D.D.S., et al. ) PROPOSED JURY INSTRUCTIONS ) OF DEFENDANT
Defendants )
Now come the Defendants to this action and request the Court to read the following instructions to the jury:
1. 1 OJI, 3.10 Burden of Proof
2. 1 OJI, 3.50 Preponderance
3. 1 OJI, 5.31 Depositions, Transcripts and Interrogatories
4. 1 OJI, 5.70 Expert Witness and Hypothetical Question
5. 1 OJI, 7.10 Negligence and Ordinary Care
6. 1 OJI, 7.13 Forseeability
7. 1 OJI, 7.15 Ordinary Care Under Dangerous Circumstances
8. 1 OJI, 9.50 Assumption of the Risk
9. 1 OJI, 11.10 Proximate Cause
10. 1 OJI, 11.30 Intervening and Superseding Causes
11. 3 OJI, 331.01 Physician or Surgeon Introduction
12. 3 OJI, 331.04 Physician or Surgeon Lack of Informed Consent (Common Law)
13. 3 OJI, 331.05 Physician or Surgeon Consent under Revised Code Section 2317.54 (and instruction on presumption)
14. 3 OJI, 331.08 Physician or Surgeon: Duty of Patient
ROETZEL ANDRESS
_____
Edward A. DiGiantonio
75 East Market Street
Akron, Ohio 44308-2700
(216) 376-2700
COUNSEL FOR DEFENDANTS
 CERTIFICATE OF SERVICE
A true copy of the foregoing instrument was served upon all counsel of record or, if not represented, upon all parties to the within action by malling United States mall postage prepaid on the ___ day of ___ 19 ___
 EDWARD A. DIGIANTONIO Roetzel and Andress 75 East Market Street Akron, OH 44308 376-2700 *Page 807