1 F.3d 141
 Rayya ABDALLAH; David Abdallah, as next of kin of Baby Boy
Abdallah, and on their own personal behalf, Appellants,
v.
Wilbur CALLENDER, M.D.; Government of the Virgin Islands.
 No. 92-7275.
 United States Court of Appeals,
Third Circuit.
 Argued April 27, 1993.
Decided June 7, 1993.
 
 Richard H. Hunter (argued), Hunter, Colianni, Cole & Turner, St. Croix, USVI, Mark L. Milligan, St. Croix, USVI, for appellants.
 Judith A. Conte (argued), Wilfredo Geigel, St. Croix, USVI, for appellees.
 Before: GREENBERG, SCIRICA, and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 I.
 BACKGROUND
 
 1
 Rayya and David Abdallah appeal from a May 15, 1992 order of the district court granting summary judgment to the defendants, Dr. Wilbur Callender and the Government of the Virgin Islands. The Abdallahs had filed a five-count complaint seeking damages for physical and emotional injuries relating to the stillbirth of their son in January 1987. The district court did not grant the summary judgment on the ground that the Abdallahs could not establish that there had been malpractice. Indeed, the defendants did not move for summary judgment on that basis. Rather, the court held that all the counts were barred for jurisdictional and procedural reasons or were derivative of counts so barred. We will vacate the district court's order in part and will remand the matter for further proceedings.
 
 A. Factual Background
 
 2
 Mrs. Abdallah, who was almost 37 years old and was pregnant in January 1987, previously had given birth to five children, two by Cesarean section.[1] She desired a vaginal delivery and phoned Dr. Callender to see if this were possible. Dr. Callender said that it was and, after meeting with the Abdallahs, scheduled Mrs. Abdallah for a vaginal delivery. Mrs. Abdallah's expected delivery date was January 22, 1987.
 
 
 3
 In the evening of January 19, 1987, Mrs. Abdallah was admitted to the St. Thomas Community Hospital because she was having contractions. This hospital is owned and operated by the Government of the Virgin Islands. At 11:35 p.m. on January 20th, Mrs. Abdallah went into labor. Dr. Callender was called at midnight and arrived about 90 minutes later. After Mrs. Abdallah had been in labor for about four hours, Dr. Callender performed a low-segment C-section and a bilateral tubal ligation and transection.
 
 
 4
 The Abdallahs' baby boy was stillborn. Mrs. Abdallah's uterine wall had torn near a previous scar, and a large amount of blood had gone into her lower abdominal cavity. Mrs. Abdallah suffered from a morbid postoperative course secondary to anemia, but otherwise recovered well. The Abdallahs contend that the bilateral tubal ligation and transection, though properly done, was performed without Mrs. Abdallah's informed consent.[2] As a result of this procedure Mrs. Abdallah is sterile.[3]B. Procedural Background
 
 
 5
 The Abdallahs filed their five-count complaint on July 15, 1988, in the district court. Count I alleged that Dr. Callender negligently caused Mrs. Abdallah to suffer a ruptured uterus and her son to be stillborn, which in turn caused both parents to suffer severe emotional and mental distress. Count II asserted that Dr. Callender performed a bilateral tubal ligation and transection on Mrs. Abdallah without her informed consent. This count alleged that as a result of Dr. Callender's "negligence and/or assault and battery" Mrs. Abdallah is now sterile. Count III alleged that the Government of the Virgin Islands, as the owner and operator of the St. Thomas Community Hospital, negligently caused the stillbirth and caused both parents to suffer severe emotional and mental distress. Count IV asserted a wrongful death claim by reason of the stillbirth of the baby boy. Count V was a claim by Mr. Abdallah for loss of consortium based on injuries to his wife.
 
 
 6
 Virgin Islands law establishes certain procedural prerequisites before tort actions may be brought against the Government of the Virgin Islands and before medical malpractice actions may be brought against health care providers. Under the Virgin Islands Tort Claims Act a plaintiff, prior to bringing a tort action against the Government, must file a claim or a written notice of intention to file a claim within 90 days after the accrual of the cause of action. A claimant filing a notice of intention must file the claim itself within two years of its actual accrual. V.I.Code Ann. tit. 33, Sec. 3409 (Supp.1990). While the Abdallahs did file a timely notice of claim on March 25, 1987, the record does not reveal whether they filed a later claim.
 
 
 7
 Under the Virgin Islands Health Care Providers Malpractice Act as a prerequisite to bringing a medical malpractice action against any health care provider, including the Government of the Virgin Islands, a plaintiff first must file a proposed complaint with the Medical Malpractice Action Review Committee. V.I.Code Ann. tit. 27, Sec. 166i(b) (Supp.1990). To meet this requirement, the Abdallahs filed a proposed complaint with the Review Committee on December 17, 1987. However, the proposed complaint, unlike the complaint they later filed in the district court, did not include the assault and battery claim.
 
 
 8
 On October 8, 1991, the defendants filed a motion for partial summary judgment raising three points of law which they thought should be resolved before trial:
 
 
 9
 1) whether the Abdallahs' action brought as Counts I, II, and V is barred as a result of not being included in the notice of claim pursuant to the Tort Claims Act, V.I.Code Ann. tit. 33, Sec. 3409;
 
 
 10
 2) whether the Abdallahs' cause of action brought in Count II is barred by the failure to include the same in the proposed complaint as mandated by the Malpractice Act, V.I.Code Ann. tit. 27, Sec. 166i(b); and
 
 
 11
 3) whether the defendants are liable to the Abdallahs, assuming they can prevail, for any amounts in excess of $75,000 in view of the limitation expounded in the Malpractice Act, V.I.Code Ann. tit. 27, Sec. 166b(c).
 
 
 12
 At a hearing on the motion on February 19, 1992, the defendants' counsel raised the additional contention that Count IV, the wrongful death claim, should be dismissed because it had not been brought by the baby's personal representative as required by V.I.Code Ann. tit. 5, Sec. 76(d) (Supp.1990). In response, counsel for the Abdallahs withdrew Count IV, which the district court then dismissed without prejudice.[4]
 
 
 13
 On May 15, 1992, the district court entered a four-page order granting the defendants summary judgment on the entire complaint. The court first noted that the Abdallahs' wrongful death claim had been withdrawn. It then concluded that Count II, which charged that Dr. Callender performed the bilateral tubal ligation and transection without Mrs. Abdallah's informed consent, was barred jurisdictionally because the Abdallahs had not included this count in their proposed complaint filed with the Review Committee. Finally, the court dismissed the Abdallahs' other claims, believing them to be derivative of the battery claim in Count II and the wrongful death claim in Count IV.[5]
 
 II.
 DISCUSSION
 
 14
 The Abdallahs seek to have the order of May 15, 1992, reversed only insofar as it granted summary judgment on Counts I, II, III, and V. Inasmuch as they do not ask us to reinstate Count IV, which they withdrew in the district court, we do not address this claim on the merits. We also do not discuss the third issue raised in the defendants' motion for summary judgment, relating to the possible limitation on damages, as the district court never reached this issue and neither party has raised it on appeal. Our review of the district court's grant of summary judgment is plenary.
 
 A. The Battery Claim--Count II
 
 15
 As we have indicated, in Count II of their complaint the Abdallahs allege that Dr. Callender committed a battery by performing a bilateral tubal ligation and transection on Mrs. Abdallah without her informed consent. Yet, the Abdallahs concede that they did not include this count in their proposed complaint submitted to the Review Committee pursuant to V.I.Code Ann. tit. 27, Sec. 166i. Therefore, as the district court correctly held, it did not have jurisdiction to hear this claim.
 
 Section 166i(b) states in relevant part:
 
 16
 No action against a health care provider may be commenced in court before the claimant's proposed complaint has been filed with the Committee and the Committee has received the expert opinion as required by this section....
 
 
 17
 Clearly, Dr. Callender is a "health care provider" as defined by the statute. See V.I.Code Ann. tit. 27, Sec. 166(c). Thus, the only real question raised by the appeal on this issue is whether the Malpractice Act requires the submission of all proposed tort actions against a health care provider acting in that capacity or whether it only applies to professional negligence actions.
 
 
 18
 The district court did not directly address this issue. Rather, it held the battery count barred, on the authority of cases establishing that a claim not listed in a proposed complaint submitted to the Review Committee is barred jurisdictionally. For example, in Berry v. Curreri, 837 F.2d 623 (3d Cir.1988), the plaintiffs filed a proposed complaint with the Review Committee which did not include any reference to a misdiagnosis or negligent performance of the surgery but asserted only that there had been negligent postoperative treatment. Nevertheless, when the plaintiffs filed their complaint in the district court, they included claims for both misdiagnosis and negligent performance of the surgery. The district court ultimately submitted these claims to the jury, which found in the plaintiffs' favor. On appeal we held that the court should not have allowed these claims to go to the jury; therefore, we reversed and ordered a new trial. Id. at 626. We stated that section 166i(b), both by its express terms and in keeping with the legislative purpose, requires that medical malpractice claims not submitted to the Review Committee be barred on jurisdictional grounds. Id.; see also Wiltshire by Wiltshire v. Government of Virgin Islands, 893 F.2d 629, 636-37 (3d Cir.1990) (holding that parents' loss of service claim based on neurological impairment not maintainable because not included in proposed complaint); Philip v. Government of Virgin Islands, 21 V.I. 3, 6 (D.V.I.1984) (dismissing negligence claims that were not in proposed complaint given to Review Committee); Quinones v. Charles Harwood Memorial Hosp., 573 F.Supp. 1101, 1103-04 (D.V.I.1983) (dismissing negligence claims because no proposed complaint submitted); Espinosa v. Government of Virgin Islands, 20 V.I. 78, 83 (Terr.Ct.1983) (same).
 
 
 19
 The Abdallahs argue that these cases are not on point because they dealt with unlisted or unsubmitted conventional malpractice claims rather than claims for battery. At first glance, it might seem that the Abdallahs are correct and that the Malpractice Act does not apply to actions for common law battery. See Black's Law Dictionary 959 (6th ed. 1990) ("In medical malpractice litigation, negligence is the predominant theory of liability."). However, upon closer inspection, it is clear that the Abdallahs are wrong.
 
 
 20
 As they concede, the Malpractice Act covers all malpractice actions. V.I.Code Ann. tit. 27, Sec. 166i(a). Critically, the Malpractice Act does not limit malpractice to professional negligence. Rather, it defines malpractice as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient." V.I.Code Ann. tit. 27, Sec. 166(f) (emphasis added). By using the phrase "any tort or breach of contract based on health care or professional services rendered," the legislature expressed its intent to cover all actions relating to the provision of medical care.[6] A plain reading of the statute, therefore, requires that we affirm the order of the district court insofar as it granted the defendants summary judgment on Count II.[7]
 
 
 21
 Alternatively, the Abdallahs argue that even assuming a battery claim falls within the Review Committee submission requirements of the Malpractice Act, their failure to submit the claim should not bar it because the Review Committee does not serve a germane purpose when a plaintiff alleges a health care provider committed a battery. We have stated that the Malpractice Act, by providing for an expert medical opinion, "is designed to eliminate claims lacking merit and encourage prompt settlement of meritorious claims." Berry, 837 F.2d at 626. According to the Abdallahs, this legislative purpose does not apply in this case, as experts cannot render an opinion on the consent issue. Thus, they urge that their failure to comply with the Review Committee submission requirement with respect to the battery claim does not bar that claim. But cf. Davis v. Omitowoju, 883 F.2d 1155 (3d Cir.1989) (in medical malpractice action, patient submitted claim to Review Committee in which she alleged doctor performed operation without her informed consent and Review Committee found that no malpractice had occurred). Whatever the logic of this argument, the fact remains that the statute does not create such an exception as it does not distinguish among tort actions. Accordingly, the district court correctly concluded that Count II should be dismissed for lack of subject matter jurisdiction.
 
 
 22
 B. The Remaining Claims--Counts I, III, and V
 
 
 23
 In their initial memorandum in support of their motion for summary judgment, the defendants did not request that judgment be entered in their favor on all counts as they limited their argument to the three specific issues we paraphrased above. But as we have indicated, at oral argument on their motion the defendants challenged Count IV on the procedural grounds that a wrongful death action could be brought only by the baby's personal representative. Then, in their supplemental memorandum filed after the hearing on the motion, they expanded their argument to contend that if Counts II and IV were dismissed, the court should dismiss at least a portion of the remaining claims as derivative of those two counts. In particular, they argued that Count I, which charged Dr. Callender with malpractice, could not be maintained because wrongful delivery "by itself does not establish a cause of action which merits any legal remedy." They urged that the result of the allegedly wrongful delivery was a wrongful death and the Abdallahs have surrendered that claim. Seemingly, the defendants could have made the same argument as to Count III, which charged the Government with malpractice, but they did not. Instead, they argued that Count III should be dismissed because the notice of claim did not satisfy the requirements of the Tort Claims Act. V.I.Code Ann. tit. 33, Sec. 3410.
 
 
 24
 We address these arguments separately. First, we discuss whether Counts I and III are simply derivative claims that rise and fall with Counts II and IV.[8] We find that they are not. Then, we consider whether Count III is jurisdictionally barred because the Abdallahs did not comply with the notice provisions of the Tort Claims Act.[9] We will remand this issue for consideration by the district court. Finally, we conclude that Count V, Mr. Abdallah's loss of consortium claim, should be reinstated because it is derivative to Counts I and III.
 
 1. Independence of Counts I and III
 
 25
 While the defendants contended in their supplemental brief in support of their motion for summary judgment that the Abdallahs have no cause of action absent their wrongful death claim, they cited no case law to support this argument. On appeal, the defendants have ignored this point. Instead, they inexplicably have defended the summary judgment on the wrongful death action even though the Abdallahs do not seek a reversal of that summary judgment.[10] We consider only the matters which the Abdallahs actually have raised.
 
 
 26
 Clearly it cannot reasonably be argued that Count I in all respects must be related to the wrongful death claim, for the Abdallahs charged in that count that Dr. Callender's malpractice caused Mrs. Abdallah to suffer a ruptured uterus. We can perceive of no reason why this claim cannot be pursued without regard for the stillbirth. Thus, we must vacate at least partially the summary judgment on Count I.
 
 
 27
 The more difficult issue relates to the Abdallahs' claims in Counts I and III for severe mental and emotional distress by reason of the stillbirth. While we have not found any Virgin Islands cases discussing whether a woman has an independent action against her doctor for malpractice resulting in the stillbirth of her child, cases from other jurisdictions clearly support the existence of such an action. In some jurisdictions a mother can maintain a malpractice action for the stillbirth of her child even though she has not suffered an independent physical injury. In Giardina v. Bennett, 111 N.J. 412, 545 A.2d 139 (1988), for example, the New Jersey Supreme Court stated[11]:
 
 
 28
 Medical malpractice causing a stillbirth results in infliction of a direct injury to the mother as well as to her unborn child. Even without any permanent physical harm, the mother suffers severe and genuine injuries in the form of emotional distress and mental anguish occasioned by her baby's stillbirth. This suffering is experienced, also, by the father of the infant. Id. 545 A.2d at 140.
 
 
 29
 Thus, the court suggested, "Parents under such facts would be entitled to claim compensatory damages based on their emotional distress and mental anguish proximately caused by the negligent conduct of their doctor that results in the stillbirth of their baby." Id. at 143. Accord Burgess v. Superior Court, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992) (noting that mother could recover for her emotional distress by reason of physical injuries to fetus caused by negligence during delivery, even absent physical injury of mother); Dunn v. Rose Way, Inc., 333 N.W.2d 830, 832-33 (Iowa 1983) (noting right of recovery in parents for damages done to unborn fetus under Iowa law); Modaber v. Kelley, 232 Va. 60, 348 S.E.2d 233, 236-37 (1986) (noting right of mother to recover for injury to unborn child in womb and for emotional distress caused by death of fetus that was still part of her). The New Jersey Supreme Court recently affirmed this principle in Carey v. Lovett, 132 N.J. 44, 622 A.2d 1279 (1993), holding that parents may recover for severe emotional distress suffered for medical malpractice resulting in the premature birth and death of their baby, without attempting to prove that they suffered physical injuries. The Carey court relied heavily on Giardina. But see id. (Handler, J., concurring) (stating that court ignored holding in Giardina by requiring parents to prove severe emotional distress).
 
 
 30
 Nevertheless, other jurisdictions apparently require the mother to suffer physical injury before allowing her to recover for the severe emotional distress arising from her fetus's death. For example, in Coughlin v. George Washington University Health Plan, Inc., 565 A.2d 67 (D.C.1989), the District of Columbia Court of Appeals held that a pregnant woman has an action for malpractice against her doctor where the miscarriage resulted in her physical injury. Id. at 70-71 (citing cases from New York and North Carolina). The court noted that the mere fact that the doctor also may owe a duty of care to the baby does not extinguish the duty of care owed to the mother. See also Brown v. Green, 767 F.Supp. 273, 275 (D.D.C.) (following Coughlin to find a cause of action on behalf of mother irrespective of cause of action in baby), order vacated on reconsideration, 781 F.Supp. 36 (D.D.C.1991); accord Prado v. Catholic Medical Center of Brooklyn & Queens, Inc., 145 A.D.2d 614, 536 N.Y.S.2d 474, 475 (1988) (noting that in New York, mother cannot recover for stillbirth absent physical injuries extending beyond normal pain and suffering associated with childbirth).
 
 
 31
 We, however, at least at this time, need not choose between the two lines of cases because Mrs. Abdallah suffered from a ruptured uterus, a direct physical injury beyond the normal pain associated with childbirth.[12] Therefore, we believe that in most jurisdictions Mrs. Abdallah would be able to recover for the severe emotional distress that she suffered due to the stillbirth of her child. Because the common law as generally understood and applied in the United States applies in the Virgin Islands absent a statute or Restatement rule to the contrary, see V.I.Code Ann. tit. 1, Sec. 4 (1967), Mrs. Abdallah has stated an independent basis for relief in Counts I and III. Accordingly, the district court erred in granting the defendants summary judgment on Counts I and III as they exist independently of Counts II or IV.
 
 
 32
 We also must consider Mr. Abdallah's claims in Counts I and III for his own severe emotional and mental distress. The cases quite naturally tend to focus on the severe emotional and mental distress to a mother suffering a stillbirth. Nevertheless we conclude that a father should have his own claim if he experiences that distress, provided he stands in an intimate family relationship to the mother and the fetus, contemporaneously observes the malpractice and the effect on the mother, and is shocked by the results. See Carey v. Lovett, 622 A.2d at 1290.[13]
 
 
 33
 2. The Virgin Islands Tort Claims Act.
 
 
 34
 The defendants argued in their supplemental memorandum on their motion for summary judgment, that Count III should be dismissed because the Abdallahs did not comply with the requirements of the Tort Claims Act in V.I.Code Ann. tit. 33, Secs. 3409, 3410. The defendants did not ask for that ruling in their initial memorandum, although they did state that Counts I, II, and V should be dismissed for this reason. The district court did not rule on this argument; rather, it dismissed Counts I, III, and V as being derivative of Counts II and IV.[14]
 
 Section 3410 states in relevant part:
 
 35
 The claim shall state the time when and the place where such claim arose, the nature of same, and items of damage or injuries claimed to have been sustained and the total sum claimed. The notice of intention to file a claim shall set forth the same matters except that the items of damage or injuries and the sum claimed need not be stated.
 
 
 36
 A review of the Abdallahs' notice of claim reveals that it met all the requirements of section 3410, at least for a notice of intention to file a claim. Their notice of claim recites the time and place of the incident as well as that their claim stemmed from the stillbirth of their child. It further lists the damage and injuries suffered and the minimum amount claimed. This information satisfies the requirements of section 3410 for a written notice of intention to file a claim, for it provides "enough information to enable the government to make an investigation in order to determine if the claims should be settled without suit." McBean v. Government of Virgin Islands, 19 V.I. 383, 388 (Terr.Ct.1983). However, we express no opinion as to whether the information was sufficient to satisfy section 3410's requirements for a claim.[15] Inasmuch as the district court did not rule on the defendants' argument under the Tort Claims Act, we will remand the case so that this argument may be considered by that court in the first instance on a full record.
 
 
 37
 3. Mr. Abdallah's Loss of Consortium--Count V.
 
 
 38
 Lastly, we address Mr. Abdallah's loss of consortium claim. The district court granted the defendants' summary judgment on this claim because it regarded it as derivative of Counts II and IV, on which it had granted summary judgment to the defendants. But as we have rejected the district court's holding that Counts I and III are derivative of Counts II and IV, Count V must be reinstated as well. We note, however, that to the extent that Mr. Abdallah seeks to recover for loss of consortium for the results of the battery, his claim remains barred. Instead, he may recover derivatively only through Counts I and III which allege injuries to his wife.[16]
 
 III.
 CONCLUSION
 
 39
 For the reasons stated above, we will vacate the district court's order with respect to Counts I, III, and V of the Abdallahs' complaint but will affirm the district court's order on Count II. The action will be remanded to the district court for further proceedings consistent with this opinion, in particular including the necessary determination of the validity of the notice under the Tort Claims Act. The parties will bear their own costs on this appeal.
 
 
 
 [1]
 We have set forth the facts that find support in the record. Obviously, some may be in dispute. For example, Dr. Callender contends that the Abdallahs only mentioned one prior C-section
 
 
 [2]
 Dr. Callender also disputes the consent issue
 
 
 [3]
 The Abdallahs obtained a medical opinion that the defendants deviated from good and accepted medical practice, which caused the uterus to rupture and resulted in the stillbirth. However, inasmuch as the district court granted summary judgment for jurisdictional and procedural reasons, we are not concerned with the merits of the Abdallahs' claims on this appeal
 
 
 [4]
 This dismissal without prejudice does not create a finality problem. In using the term "without prejudice," the district court intended only to indicate that the personal representatives of the stillborn child's estate were not precluded from later bringing a wrongful death action. Therefore, as to the Abdallahs, who are the only plaintiffs in this case, the court's decision was final. Moreover, given that the two-year statute of limitations has run on the wrongful death claim, see Hatchette v. West Indian Co., 17 V.I. 549, 550 (D.V.I.1980), no plaintiff can bring that action successfully. Thus, there is no risk of piecemeal appeals. See Welch v. Folsom, 925 F.2d 666, 668 (3d Cir.1991); Green v. Humphrey Elevator & Truck Co., 816 F.2d 877, 878 n. 4 (3d Cir.1987)
 
 
 [5]
 The district court had jurisdiction under 48 U.S.C. Sec. 1612. See Brow v. Farrelly, 994 F.2d 1027, 1033-34 (3d Cir.1993). We have jurisdiction under 28 U.S.C. Sec. 1291
 
 
 [6]
 In a similar case, the Indiana Court of Appeals held that a mere allegation of battery was not enough to remove a patient's complaint from the purview of Indiana's Medical Malpractice Act. See Boruff v. Jesseph, 576 N.E.2d 1297 (Ind.Ct.App.1991). But the Boruff case is distinguishable in that the majority characterized the operation without informed consent in that case as negligence. Id. at 1299; see also id. at 1299-1300 (Barteau, J., concurring in part, dissenting in part) (noting that battery, operation without consent, falls outside Medical Malpractice Act)
 
 
 [7]
 The Abdallahs cite several cases from other jurisdictions to establish that an unconsented-to operation constitutes battery. See, e.g., Kelton v. District of Columbia, 413 A.2d 919, 922-23 (D.C.1980). However, these cases are not material to the issue before us inasmuch as an action for battery is based in tort. Therefore, because Count II is based in tort and is related to health care services rendered, the statute required its submission to the Review Committee prior to the initiation of suit
 
 
 [8]
 In view of the defendants' failure to raise this point in the district court, we would be justified in declining to consider whether Count III is derivative of Counts II and IV. Nevertheless, we will consider the issue on the merits, as our disposition of this issue as to Count I inevitably decides the question as to Count III
 
 
 [9]
 Count I is not subject to the same argument because it was brought only against Dr. Callender acting in his private capacity, and not against the Government of the Virgin Islands. See Saludes v. Ramos, 744 F.2d 992, 993 n. 2 (3d Cir.1984). Indeed, we are at a loss in these circumstances to understand why in their motion for summary judgment the defendants sought a determination of whether Counts I and II were barred by the Tort Claims Act, as they were asserted only against Dr. Callender
 
 
 [10]
 The Abdallahs do suggest that the wrongful death claim should have survived the defendants' motion for summary judgment, but they nevertheless do not seek relief on that count
 
 
 [11]
 In Giardina the issue was whether the New Jersey Wrongful Death Act permitted recovery by reason of the wrongful death of an infant before birth. Id., 545 A.2d at 139. However, before holding that it did not, the New Jersey Supreme Court in a comprehensive discussion concluded that the parents could bring a malpractice action against the doctor. In view of the procedural posture of the case that discussion may have been dicta
 
 
 [12]
 We point out that we are proceeding on the assumption with respect to the claims of both Abdallahs that they will be able to establish that (1) Mrs. Abdallah suffered a ruptured uterus and (2) this injury was attributable to malpractice. If at trial they do not establish both of these matters, the district court will have to decide whether Counts I and III nevertheless are viable to the extent that they seek recoveries for severe mental and emotional distress by reason of the stillbirth
 
 
 [13]
 We reemphasize as set forth in footnote 12 that we only are determining that Mr. Abdallah's claim is viable on the assumption that Mrs. Abdallah suffered a ruptured uterus attributable to malpractice. If not, then the district court will have to make the determination as to whether he has a claim as we have already set forth in footnote 12
 
 
 [14]
 Actually the district court's order is not entirely clear as the court seems to have been somewhat confused about what was alleged in each count. We have predicated our opinion on our construction of the order
 
 
 [15]
 In particular, the notice of claim filed by the Abdallahs does not mention any physical injuries suffered by Mrs. Abdallah. Thus, Count III might be barred if under Virgin Islands law a mother had to suffer physical injuries before the parents could recover for the emotional injuries associated with the stillbirth of their child. We do not decide this question because of its hypothetical nature. The determination on this issue would be identical to that which the district court will make with respect to the claim for damages for severe emotional and mental distress if the Abdallahs are unable to establish that she suffered a ruptured uterus attributable to malpractice as we discuss in footnote 12, supra. This is because the viability vel non of a claim for severe emotional and mental distress is the same whether it stands alone because the plaintiffs are barred from demonstrating for procedural reasons that the mother suffered physical injuries attributable to the malpractice, or because she simply did not suffer the injuries. We also point out that the serving of the civil complaint following the service of the notice of claim may have satisfied the section 3409 requirement, thus obviating the need to assess whether the notice of claim was sufficient in itself. See Albert v. Abramson's Enters., Inc., 790 F.2d 380, 383 (3d Cir.1986). This possibility may be considered on remand
 
 
 [16]
 Of course, the loss of consortium claim as related to Count III will be barred under the Tort Claims Act if Mrs. Abdallah's direct claim on the count is barred under that Act. We also reiterate that Mr. Abdallah has asserted his own claim for severe mental and emotional distress in Counts I and III, and that the Abdallahs have alleged that there was a direct physical injury inflicted on Mrs. Abdallah only in count I. Obviously Mr. Abdallah should not be permitted a double recovery, i.e., a recovery for the same injury from severe mental and emotional distress directly and through a claim of loss of consortium